UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| EDMOND MEYOU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-2806 (JDB) |
| | ) | |
| U.S. DEPARTMENT OF STATE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF**

# <u>TABLE OF CONTENTS</u>

Table of Contents ........................................................................................................................ i

Table of Authorities .................................................................................................................. ii

Background ................................................................................................................................ 1

Legal Standards ........................................................................................................................ 3

Argument .................................................................................................................................. 4

      I.      Plaintiff Names Officials Who Cannot Provide the Relief Requested. .................. 4

      II.     Plaintiff's Claims Are Untenable Due to the Consular Non-Reviewability Doctrine ........................................................................................................................ 5

      III.    On the Merits, the Delay Here Is Not Unreasonable. ............................................ 8

            A.    *TRAC* Factors 1 and 2 ............................................................................. 10

            B.    *TRAC* Factor 4 ........................................................................................ 13

            C.    *TRAC* Factors 3 and 5 ............................................................................. 15

            D.    *TRAC* Factor 6 ........................................................................................ 17

      IV.    Plaintiff Fails to State a Cognizable Constitutional Claim ................................... 18

Conclusion .............................................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page**

*Abdo v. Tillerson*,
   Civ. A. No. 17-7519, 2019 WL 464819 (S.D.N.Y. Feb. 5, 2019) ............................................ 6

*Am. Nat'l Ins. Co. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ............................................................................................ 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................................. 3

*Ayala-Flores v. INS*,
   662 F.2d 444 (6th Cir. 1981) ............................................................................................... 19

*Baan Rao Thai Rest. v. Pompeo*,
   985 F.3d 1020 (D.C. Cir. Jan. 22, 2021)............................................................... 4, 5, 6, 7, 8

*Bagherian v. Pompeo*,
   442 F. Supp. 3d 87 (D.D.C. 2020) ...................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................... 3

*Butt ex rel Q.T.R. v. Barr*,
   954 F.3d 901 (6th Cir. 2020) ............................................................................................... 19

*Cannon v. District of Columbia*,
   717 F.3d 200 (D.C. Cir. 2013) .............................................................................................. 2

*Cervantes v. INS*,
   510 F.2d 89 (10th Cir. 1975) ............................................................................................... 19

*Cortez-Flores v. INS*,
   500 F.2d 178 (5th Cir. 1974) ............................................................................................... 19

*Dallas Safari Club v. Bernhardt*,
   Civ. A. No. 19-3696 (APM), 2021 WL 495078 (D.D.C. Feb. 9, 2021) .................................. 17

*Dastagir v. Blinken*,
   Civ. A. No. 20-02286 (TNM), 2021 WL 2894645 (D.D.C. July 9, 2021) ... 9, 10, 12, 15, 16, 17

*de Robles v. INS*,
   485 F.2d 100 (10th Cir. 1973) ............................................................................................. 19

*Delgado v. INS*,
   637 F.2d 762 (10th Cir.1980) .............................................................................................. 19

*Dep't of Homeland Sec. v. Thuraissigiam*,
    140 S. Ct. 1959 (2020) ........................................................................................ 18

*Didban v. Pompeo*,
    435 F. Supp. 3d 168 (D.D.C. 2020) ...................................................................... 11

*EEOC v. St. Francis Xavier Parochial Sch.*,
    117 F.3d 621 (D.C. Cir. 1997) ................................................................................ 2

*El Centro Reg'l Med. Ctr. v. Blinken*,
    Civ. A. No. 21-0361, 2021 WL 3141205 (S.D. Cal. July 26, 2021) ...................... 10

*Gallanosa v. United States*,
    785 F.2d 116 (4th Cir. 1986) ................................................................................ 19

*Ghadami v. Dep't of Homeland Sec.*,
    Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376 (D.D.C. Mar. 19, 2020) ........................ 11, 14

*Gong v. Duke*,
    282 F. Supp. 3d 566 (E.D.N.Y. 2017) .................................................................. 14

*Herbert v. Nat'l Acad. of Scis.*,
    974 F.2d 192 (D.C. Cir. 1992) ................................................................................ 3

*In re Barr Labs.*,
    930 F.2d 72 (D.C. Cir. 1991) .......................................................................... 14, 16

*In re Bluewater Network*,
    234 F.3d 1305 (D.C. Cir. 2000) ........................................................................ 8, 12

*In re Core Commc'ns, Inc.*,
    531 F.3d 849 (D.C. Cir. 2008) .......................................................................... 8, 12

*In re United Mine Workers of Am. Int'l Union*,
    190 F.3d 545 (D.C. Cir. 1999) ................................................................................ 9

*Kangarloo v. Pompeo*,
    Civ. A. No. 20-0354 (CJN), 2020 WL 4569341 (D.D.C. Aug. 7, 2020) ............................ 1, 7

*Kerry v. Din*,
    576 U.S. 86 (2015) .......................................................................................... 18, 19

*Landon v. Plasencia*,
    459 U.S. 21 (1982) .............................................................................................. 19

*Li Hing of Hong Kong, Inc. v. Levin*,
    800 F.2d 970 (9th Cir. 1986) .................................................................................. 4

*Liberty Fund v. Chao*,
 394 F. Supp. 2d 105 (D.D.C. 2005) .................................................................. 14, 15

*Liu v. Blinken*,
 Civ. A. No. 21-0629 (TJK), 2021 WL 2514692 (D.D.C. June 18, 2021) .............. 10, 15, 16, 17

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ............................................................................................. 3

*Marin-Garcia v. Holder*,
 647 F.3d 666 (7th Cir. 2011) .............................................................................. 19

*Markowicz v. Johnson*,
 206 F. Supp. 3d 158 (D.D.C. 2016) ...................................................................... 2

*Martial-Emanuel v. Holder*,
 523 F. App'x 345 (6th Cir. 2013) ........................................................................ 19

*Mashpee Wampanoag Tribal Council v. Norton*,
 336 F.3d 1094 (D.C. Cir. 2003) .................................................................. 12, 13, 14

*Milligan v. Pompeo*,
 502 F. Supp. 3d 302 (D.D.C. 2020) .............................................................. 10, 15, 16, 17

*Mohammad v. Blinken*,
 Civ. A. No. 20-3696 (TNM), 2021 WL 2866058 (D.D.C. July 8, 2021) ..... 9, 10, 13, 15, 16, 17

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affairs*,
 842 F. Supp. 2d 127 (D.D.C. 2012) ..................................................................... 17

*Newton v. INS*,
 736 F.2d 336 (6th Cir. 1984) .............................................................................. 19

*Nine Iraqi Allies v. Kerry*,
 168 F. Supp. 3d 268 (D.D.C. 2016) ....................................................................... 6

*Papasan v. Allain*,
 478 U.S. 265 (1986) ............................................................................................. 3

*Payne-Barahona v. Gonzales*,
 474 F.3d 1 (1st Cir. 2007) .................................................................................. 19

*Perdido v. INS*,
 420 F.2d 1179 (5th Cir. 1969) ............................................................................ 19

*Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*,
 43 F. Supp. 3d 28 (D.D.C. 2014) ........................................................................... 2

*Polyzopoulos v. Garland,*
  Civ. A. No. 20-0804 (CKK), 2021 WL 1405883 (D.D.C. Apr. 14, 2021) ............................ 7, 8

*Rafeedie v. INS,*
  880 F.2d 506 (D.C. Cir. 1989) ..................................................................................... 18

*Rohrbaugh v. Pompeo,*
  394 F. Supp. 3d 128 (D.D.C. 2019) ............................................................................. 19

*Saavedra Bruno v. Albright,*
  197 F.3d 1153 (D.C. Cir. 1999) ................................................................................. 4, 5

*Sarlak v. Pompeo,*
  Civ. A. No. 20-0035 (BAH), 2020 WL 3082018 (D.D.C. June 10, 2020) ............. 11, 12, 13, 14

*Shen v. Pompeo,*
  Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025 (D.D.C. Mar. 24, 2021) ............. 10, 15, 16, 17

*Skalka v. Kelly,*
  246 F. Supp. 3d 147 (D.D.C. 2017) ......................................................................... 11, 16

*Swartz v. Rogers,*
  254 F.2d 338 (D.C. Cir. 1958) ..................................................................................... 19

*Tate v. Pompeo,*
  513 F. Supp. 3d 132, 2021 WL 148394 (D.D.C. Jan. 16, 2021) ............... 10, 12, 13, 15, 16, 17

*Telecommunications Research & Action Center ("TRAC") v. FCC,*
  750 F.2d 70 (D.C. Cir. 1984) ............................................................................. 1, 8, 9, 17

*Thomas v. Principi,*
  394 F.3d 970 (D.C. Cir. 2005) ....................................................................................... 3

*United States ex rel. Knauff v. Shaughnessy,*
  338 U.S. 537 (1950) ............................................................................................... 5, 18

*Varol v. Radel,*
  420 F. Supp. 3d 1089 (S.D. Cal. 2019) .......................................................................... 15

*Wan Shih Hsieh v. Kiley,*
  569 F.2d 1179 (2d Cir. 1978) ......................................................................................... 5

*Wilson v. Wolf,*
  Civ. A. No. 20-0100 (ABJ), 2021 WL 230136 (D.D.C. Jan. 22, 2021) ................................. 2

*Xu v. Cissna,*
  434 F. Supp. 3d 43 (S.D.N.Y. 2020) ......................................................................... 11, 14

*Yavari v. Pompeo*,
  Civ. A. No. 19-02524, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) ..................................... 11

**Statutes**

5 U.S.C. § 702 ........................................................................................................................... 4

5 U.S.C. § 706(1) ...................................................................................................................... 8

28 U.S.C. § 1361 ....................................................................................................................... 1

**Regulations**

22 C.F.R. § 41.121(a) ............................................................................................................... 7

22 C.F.R. § 42.81(a) ................................................................................................................. 7

By and through their undersigned counsel, Defendants—certain agencies and officials of the United States responsible for administering the Nation's immigration laws and programs—respectfully move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6).

In short, Plaintiff seeks to compel the Government to act on a visa application—which has been refused by a consular officer in a foreign country—claiming unreasonable delay.[1]  Plaintiff, however, names the Secretary of State who cannot provide Plaintiff the sought-after relief. Further, consular decisions of the sort at issue here are immune from review under the consular non-reviewability doctrine as the D.C. Circuit has recently reiterated.  Even were this case otherwise properly before the Court, however, the consular officer's pace of re-adjudicating the visa application at issue is not unreasonable as a matter of law under the factors identified in *Telecommunications Research & Action Center* ("*TRAC*") *v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984), including in light of the global COVID-19 pandemic.  Plaintiff also purports to bring a claim under the Due Process Clause of the Fifth Amendment.  Plaintiff does not specify whether this claim is based on a procedural or substantive theory.  Under either, however, this claim plainly lacks merit.  For these reasons, the Court should dismiss this case without prejudice.

## **BACKGROUND**

Through this action, Plaintiff seeks to compel the Government to decide a request for a visa made by Plaintiff's spouse (the "Beneficiary").  *See generally* Compl.  Plaintiff contends that U.S. Citizenship and Immigration Services ("USCIS"), a component of the Department of

---

[1]    In seeking to compel action, Plaintiff brings both a claim under the Administrative Procedure Act ("APA") and a mandamus claim under 28 U.S.C. § 1361.  *See* Compl.  As the two claims are functionally identical in this circumstance, *see Kangarloo v. Pompeo*, Civ. A. No. 20-0354 (CJN), 2020 WL 4569341, at *7 (D.D.C. Aug. 7, 2020), Defendants address them together herein.  Indeed, "[b]ecause Plaintiff['s] APA claim fails, mandamus is not available." *Id.*

Homeland Security, concluded its processing of the underlying petition on December 12, 2018. Compl. ¶ 14.  Plaintiff alleges that the case was then forwarded to the State Department and later a consular officer in Cotonou, Benin (the "Foreign Jurisdiction").  Plaintiff claims that a consular officer conducted an interview with the Beneficiary on December 11, 2019.  Public records show that after the interview, the consular officer "refused" the Beneficiary's visa application.  *See* Compl. ¶ 17 (identifying State Department application number); Consular Elec. Application Ctr., Visa Status Check, https://ceac.state.gov/CEACStatTracker/Status.aspx (using State Department application number, showing application was "Refused").[2]  Ultimately, the period between the Government's last action on the visa request and the date Plaintiff filed this suit was approximately 22 months.  As discussed below, this delay is not unreasonable.

Due to the onset of the COVID-19 global pandemic, the State Department suspended visa services in the Foreign Jurisdiction—as with all U.S. embassies and consulates around the world— in March 2020.  *See* Suspension of Routine Visa Servs., https://travel.state.gov/content/travel/en/ News/visas-news/suspension-of-routine-visa-services.html.  Four months later, in July 2020, U.S. embassies and consulates began a phased resumption of routine visa services.  *See id.*  Currently, visa services are being offered on a post-by-post basis, consistent with State Department guidance

---

[2]      The Court may take judicial notice of information posted on official public websites of government agencies.  *See, e.g., Markowicz v. Johnson*, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016) (Contreras, J.) (citing *Pharm. Rsch. & Mfrs. of Am. v. Dep't of Health & Human Servs.*, 43 F. Supp. 3d 28, 33 (D.D.C. 2014) (Contreras, J.) ("Courts in this jurisdiction have frequently taken judicial notice of information posted on official public websites of government agencies.") (citing *Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of document posted on D.C. public website)))).  As such, the Court can consider the websites cited herein without converting this motion into one seeking summary judgment.  *See, e.g., Wilson v. Wolf*, Civ. A. No. 20-0100 (ABJ), 2021 WL 230136, at *4 (D.D.C. Jan. 22, 2021) ("In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.'") (citing, among others, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

for safely returning our Nation's consular officials and diplomats to work based on COVID-19 conditions where each post is located.  *See* Visa Services Operating Update, https://travel.state. gov/content/travel/en/News/visas-news/visa-services-operating-status-update.html.

## LEGAL STANDARDS

Under Rule 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court considering a Rule 12(b)(1) motion must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a motion to dismiss pursuant to Rule 12(b)(6), the pleadings are construed broadly so that all facts pleaded therein are accepted as true, and all inferences are viewed in a light most favorable to the plaintiff.  *See Iqbal*, 556 U.S. at 678.  However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

## ARGUMENT

### I.   Plaintiff Names The Secretary of State Who Cannot Provide the Relief Requested.

Plaintiff names the Secretary of State, but the Secretary cannot adjudicate an application for a visa.  As the D.C. Circuit has recently reemphasized, the INA "grants consular officers 'exclusive authority to review applications for visas, *precluding even the Secretary of State* from controlling their determinations.'"  *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. Jan. 22, 2021) (emphasis added) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)).  "The powers afforded to consular officers include, in particular, the granting, denying and revoking of immigrant and non-immigrant visas."  *Saavedra Bruno*, 197 F.3d at 1156.

Obviously, where a plaintiff seeks to challenge a rulemaking or other policy or practice of an Executive Branch agency, the head of the agency is the ordinary and appropriate defendant and target of any potential injunction or decree issued by the Court.  But here, Plaintiff does not seek to challenge a State Department policy, rules, practice, or regulation.  Instead, in this suit, Plaintiff seeks to compel further action on the Beneficiary's visa application, which is the exclusive province of the consulate in the Foreign Jurisdiction.  *Cf.* 5 U.S.C. § 702 (an APA injunction "shall specify the Federal officer or officers (by name or by title), and their successors in office, *personally* responsible for compliance") (emphasis added); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) ("The [INA] thereby conferred upon consular officials the authority to issue or withhold visas. Congress specifically exempted the exercise of this power from review by the Secretary of State.") (citation omitted).

## II.    Plaintiff's Claims Are Untenable Due to the Consular Non-Reviewability Doctrine.

After realizing that only a consular officer can grant the requested relief, this suit runs headfirst into the consular non-reviewability doctrine.

As the D.C. Circuit recently reaffirmed, "[c]onsular nonreviewability shields a consular officer's decision to issue *or withhold* a visa from judicial review, at least unless Congress says otherwise." *Baan Rao*, 985 F.3d at 1024 (emphasis added) (citing *Saavedra Bruno*, 197 F.3d at 1159. This is because "[d]ecisions regarding the admission and exclusion of noncitizens may implicate relations with foreign powers, or involve classifications defined in the light of changing political and economic circumstances and, accordingly, such judgments are frequently of a character more appropriate to either the Legislature or the Executive." *Baan Rao*, 985 F.3d at 1024 (internal alterations, quotation marks, and citation omitted); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950) ("it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien"); *Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978) (stating it is "settled that the judiciary will not interfere with the visa-issuing process").

In *Baan Rao*, the D.C. Circuit went on to note that there are only "two narrow circumstances" where the doctrine does not apply: (1) where an U.S. citizen challenges the exclusion of a noncitizen if it burdens the citizen's constitutional rights; and (2) where Congress says otherwise. *Id.* (collecting citations). Notably, the Circuit did not include an exception for the claim brought here—a suit seeking to compel a further decision on a visa application that has already been refused. Moreover, while styled as a suit seeking mandamus, ultimately Plaintiff asks the Court to decide whether the consular officer can continue to withhold the visa based on the officer's initial refusal or must make another decision to issue or withhold the visa. No reading

of *Baan Rao* and the D.C. Circuit's precedents permits such a claim seeking review of the merits or duration of a consular officer's withholding of a visa.

Indeed, by confining the exceptions to the doctrine and noting that doctrine prevents review of decisions to "withhold" visas, the D.C. Circuit's approach in *Baan Rao* mirrors the widely held view of courts in the Second Circuit that "the doctrine of consular nonreviewability applies not only when 'a plaintiff challenges an official's discretionary decision to approve or deny a visa application,' but also 'where a plaintiff seeks to compel an official to simply adjudicate a visa application.'" *Abdo v. Tillerson*, Civ. A. No. 17-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019) (collecting cases; noting limited exception for "cases brought by U.S. citizens raising constitutional, rather than statutory, claims"). As such, under the Circuit's clear and recent guidance, Plaintiff's complaint fails to state a claim for relief. *Baan Rao*, 985 F.3d at 1027-29 (consular non-reviewability is a merits disposition properly brought under Rule 12(b)(6)).

While Plaintiff will undoubtedly cite a lengthy list of non-controlling decisions from this Court that pre-date *Baan Rao* and found jurisdiction to compel consular action, nearly all are distinguishable from the circumstances presented here. For example, in *Nine Iraqi Allies v. Kerry*, 168 F. Supp. 3d 268, 298 (D.D.C. 2016), Judge Kessler found the doctrine did not bar plaintiffs' claims. But in that suit, the Court found that the INA provided a particular adjudicatory timetable for the specific applications at issue (i.e., special immigrant visas of Iraqis who provided direct support for the United States' military efforts in Iraq) and that denials of those applications were subject to specific congressional reporting obligations. *Id.* at 281. The Court concluded it was this specific timetable and these specific provisions that guided its decision. *See id.* at 289 (noting that the government cannot both avoid congressional reporting for denied applications and claim

consular non-reviewability for unreported denials); *id.* at 294 ("Congress has provided a clear nine-month timeline for the adjudication of [special immigrant visa] applications.").

Here, the visa application is not one for a special immigrant visa, and the State Department's website lists the status of the application as "refused" not in "administrative processing." While additional processing might cause a consular officer to revisit or reconsider that refusal, a decision contemplated by the State Department's regulations has most certainly been made. *See* 22 C.F.R. § 42.81(a) (noting that once an immigrant visa application is properly presented, the consular officer must issue the visa, refuse the visa, or discontinue granting the visa); 22 C.F.R. § 41.121(a) (same for non-immigrant visas). And the consular officer's decision to withhold a visa based on that refusal is not reviewable. *Baan Rao*, 985 F.3d at 1024-25 (doctrine bars review of decisions to "issue *or withhold* a visa"). Applying these precedents, recent authority from this District has held that the consular non-reviewability doctrine precludes a court from compelling a consular officer to issue a decision after the officer has refused a visa. *See Polyzopoulos v. Garland*, Civ. A. No. 20-0804 (CKK), 2021 WL 1405883, at *6 (D.D.C. Apr. 14, 2021) ("a consular officer *already rendered* a decision on the merits of [the noncitizen's] visa application, refusing the application . . . The fact that [the noncitizen has] requested reconsideration of that decision, does not alter the fact that Plaintiffs are now challenging the substantive result of the consular officer's decision to refuse [the noncitizen's] visa application. Such a challenge to the merits of a final consular visa decision remains subject to the consular non-reviewability doctrine, which precludes judicial review.") (emphasis in original; internal citations omitted).

The remaining authorities that have suggested the doctrine does not bar a suit to compel action also largely arose in different circumstances, namely applications for waivers under President Trump's Proclamation 9645, which imposed a waiver process for noncitizens from

certain countries.  *See, e.g., Kangarloo*, 2020 WL 4569341, at *3 (collecting cases).  But President

Biden has rescinded Proclamation 9645 (*see* Proclamation on Ending Discriminatory Bands on

Entry to the United States (Jan. 20, 2021)), and thus, those waiver cases are plainly no longer at

issue or germane to this action.  Indeed, in ruling that the doctrine did not bar suits to compel

consular officials to make waiver decisions, judges often distinguished those suits from ones

seeking to compel further adjudication after a "refusal."  *Id.* at *3 ("the consular nonreviewability

doctrine does not apply to the waiver process so long as the government has not made a final

decision whether to grant or deny the waiver, even if the doctrine bars review of the original

refusal").

At bottom, the D.C. Circuit has now reemphasized that the consular non-reviewability

doctrine applies to decisions to "issue *or withhold* a visa" except in two very limited circumstances.

*Baan Rao*, 985 F.3d at 1024-25 (emphasis added).  Here, by refusing the visa application and

continuing to withhold the issuance of a visa based on that refusal, the consular officer's actions

fall squarely into the doctrine as recognized by the D.C. Circuit.  Therefore, even had district court

decisions in this Circuit previously held the doctrine could be used to compel action on an

application after an initial refusal in the circumstances presented here, those decisions are now

inconsistent with D.C. Circuit precedent and cannot provide a basis for Plaintiff's claims.

**III.      On the Merits, the Delay Here Is Not Unreasonable.**

Even were the Court to reach the merits of Plaintiff's allegations, Plaintiff has still failed

to state a claim because any delay here is not unreasonable as a matter of law.  When a plaintiff

seeks a writ of mandamus to "compel agency action unlawfully withheld or unreasonably

delayed," 5 U.S.C. § 706(1), a court "starts from the premise that issuance of the writ is an

extraordinary remedy, reserved only for the most transparent violations of a clear duty to act."  *In*

*re Bluewater Network*, 234 F.3d 1305, 1315 (D.C. Cir. 2000).  "The central question in evaluating

'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79). Courts in this Circuit apply a six-factor test to determine whether agency action has been unreasonably delayed:

> (1)   the time agencies take to make decisions must be governed by a rule of reason;
>
> (2)   where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3)   delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4)   the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5)   the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6)   the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (quoting *TRAC*, 750 F.2d at 80) (citations and quotation marks omitted). Applying these factors here makes clear any delay here is not unreasonable.

Indeed, there is a growing unanimous chorus of decisions in this District holding that suits such as this, which seek to compel State Department action on visa requests delayed due to processing limitations (including those caused by the pandemic), fail under the *TRAC* factors. *See, e.g.*, *Dastagir v. Blinken*, Civ. A. No. 20-02286 (TNM), 2021 WL 2894645, at *5 (D.D.C. July 9, 2021) (dismissing immigration mandamus suit under *TRAC*, "[t]he Court does not doubt that the waiting time has impacted [plaintiff] and her family. But 'delays stemming from resource-allocation decisions simply do not lend themselves to judicial reordering of agency priorities.' And

[plaintiff] offers no basis for judicial line-cutting those also waiting their turn") (citation omitted); *Mohammad v. Blinken*, Civ. A. No. 20-3696 (TNM), 2021 WL 2866058, at *4 (D.D.C. July 8, 2021) (same); *Shen v. Pompeo*, Civ. A. No. 20-1263 (ABJ), 2021 WL 1246025, at *7-9 (D.D.C. Mar. 24, 2021) (dismissing immigration mandamus suit under *TRAC*); *Liu v. Blinken*, Civ. A. No. 21-0629 (TJK), 2021 WL 2514692, at *7 (D.D.C. June 18, 2021) (denying motion for provisional relief in immigration mandamus suit, "Defendants, not this Court, are best positioned to understand the continued effect of the pandemic on their operations, the entire backlog of visa applications, the competing demands on involved personnel, and even how (if at all) to account for the impending deadline [for certain visas]. Thus, Defendants, not this Court, know best how to allocate their resources and prioritize the processing of visa applications."); *Tate v. Pompeo*, 513 F. Supp. 3d 132, 2021 WL 148394, at *9-12 (D.D.C. Jan. 16, 2021) (Howell, C.J.) (denying motion for provisional relief in immigration mandamus suit, "defendants face challenges in determining how to best deploy scarce resources. Balancing the relevant factors, 'the government's interests in balancing its own priorities' and determining how to allocate scarce resources in a global pandemic outweigh plaintiffs' interests in immediate adjudication of their visas"); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 316-20 (D.D.C. 2020) (Boasberg, J.) (same).  And this District is not alone in recently reaching these conclusions.  *See, e.g., El Centro Reg'l Med. Ctr. v. Blinken*, Civ. A. No. 21-0361, 2021 WL 3141205, at *4 (S.D. Cal. July 26, 2021) (applying *TRAC* finding that visa application refused at post was not unreasonably delayed; dismissing case under Rule 12(b)(6)).

### A. *TRAC* Factors 1 and 2

The first and second *TRAC* factors weigh in Defendants' favor.  *See Dastagir*, 2021 WL 2894645, at *3-5; *Mohammad*, 2021 WL 2866058, at *3-4; *Liu*, 2021 WL 2514692, at *6; *Shen*, 2021 WL 1246025, at *8; *Milligan*, 502 F. Supp. 3d at 318-19.  These factors ask whether the

length of time for the agency to act is governed by a "rule of reason" as informed by any specific timetable established by Congress.  *Id.*  There is no statutory or regulatory timeframe within which the State Department or a consular officer must re-adjudicate visa applications.  "To the contrary, Congress has given the agencies wide discretion in the area of immigration processing."  *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (Leon, J.) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention").  Because Congress has established no firm timetable for a consular official to re-adjudicate the visa application at issue, the Court must determine whether the application has been pending for an unreasonable amount of time as established by case law.  *See Sarlak v. Pompeo*, Civ. A. No. 20-0035 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) ("Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine whether a delay is reasonable.).

Here, the case law fails to support Plaintiff's claim of unreasonable delay.  Indeed, courts in this District and elsewhere have routinely concluded that delays for immigration benefits far longer than the delay here do not constitute unreasonable delay.  *See Ghadami v. Dep't of Homeland Sec.*, Civ. A. No. 19-0397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("[M]any courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law."); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (Bates, J.) (finding that "the roughly twenty-five-month delay to this point in adjudicating [plaintiff's] waiver eligibility is not unreasonable"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (Cooper, J.) (holding that the plaintiffs had "failed to establish that the two-year delay in processing [a] waiver application is unreasonable"); *Skalka*, 246 F. Supp. 3d at 153-54 (citing case law that even a five- to ten-year delay in the immigration context may be reasonable);

*Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) (finding a three-year delay in adjudicating an asylum application to not be unreasonable under the APA); *Yavari v. Pompeo*, Civ. A. No. 19-02524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."). Using this "case law as a guide," these initial *TRAC* factors weigh in Defendants' favor. *See Sarlak*, 2020 WL 3082018, at *6.

Moreover, a review of the factual circumstances surrounding the consular officer's handling of the visa application confirms that there has been no "transparent violation[ ] of a clear duty to act[,]" *Bluewater Network*, 234 F.3d at 1315, or delay "so egregious as to warrant mandamus[,]" *Core Commc'ns, Inc.*, 531 F.3d at 855. Indeed, "[w]hether a 'rule of reason' exists for agency action 'cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Tate v. Pompeo*, Civ. A. No. 20-3249 (BAH), 2021 WL 148394, at *10 (D.D.C. Jan. 16, 2021) (quoting *Mashpee Wampanoag Tribal Council v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)). As in *Tate*, "the delay in processing plaintiffs' visa applications is a function of 'the Secretary of State's decision to reduce consular processing [in order to] protect the health of consular officers and the public' in light of the COVID-19 pandemic." *Id.* at *11 (quoting agency declaration).

Far from egregious, the delay here is due to reasonable and prudent measures to protect safety and health. As such, the first two *TRAC* factors weighed in the State Department's favor. *Dastagir*, 2021 WL 2894645, at *5 (finding first two *TRAC* factors favored the agency in a nearly identical suit seeking to compel the re-adjudication of a visa application pending at post, "Issues

like a pandemic and local government restrictions are out of the control of the Government and are justifications for delay that the Court is ill-equipped to second guess. These circumstances offer sufficient 'rhyme [and] reason' to explain the Government's response time."); *Mohammad*, 2021 WL 2866058, at *4 (reaching same holding, rejecting plaintiff's attempt to point to USCIS aspirational processing time estimate, noting plaintiff "cannot make apple juice with oranges. The State Department, not USCIS, will handle the visa application.  So its processing estimates are not the appropriate yardstick with which to measure the work of the State Department, a separate agency.").

B.      *TRAC* **Factor 4**

The fourth *TRAC* factor—the effect of granting relief on the agency's competing priorities—carries significant weight, *see Mashpee Wampanoag*, 336 F.3d at 1100, and weighs heavily in Defendants' favor as Plaintiff asks this Court to move the application here ahead of other pending applications, *see* Compl., Prayer for Relief.  Indeed, "[r]elief that would simply 'reorder' a queue of applicants seeking adjudication is generally viewed as inappropriate when 'no net gain' in such adjudications is achieved."  *Tate*, 2021 WL 148394, at *11 (quoting *Sarlak*, 2020 WL 3082018, at *6).  For example, in *Tate*, the Court considered similar facts and claims, holding that this factor "conclusively favors defendants." *Id.*  Specifically, the *Tate* Court considered the agency's competing priorities, noting that the State Department currently "face[s] an extraordinary backlog of visas across the world, processing visas at less than 11 percent of normal capacity from July 15, 2020, to September 30, 2020, and processing nonimmigrant visa applications at less than 16 percent of normal capacity in November 2020."  *Id.*  "Given this backlog and the continued suspension of routine operations around the world due to the pandemic, . . . deference to the State Department's priority-setting and prioritization of 'mission critical'

functions is necessary."  *Id.*  Notwithstanding these competing priorities, Plaintiff asks the Court to move the application here to the front of the line and cause further delay for other applicants awaiting visa determinations.  *See* Compl., Prayer for Relief.

The holding in *Tate* is not unique.  Under this Circuit's precedent, a court will not compel agency action where the result would be merely to expedite the consideration of a plaintiff's application ahead of others.  *See Liberty Fund v. Chao*, 394 F. Supp. 2d 105, 117 (D.D.C. 2005) (Bates, J.) (courts will not compel agency action where result "would mean putting [plaintiff] at the head of the queue at the expense of others"); *Mashpee Wampanoag*, 336 F.3d at 1101 ("We agree with the Secretary that the district court erred by disregarding the importance of there being 'competing priorities' for limited resources.  The district court offered no legal justification for precluding the Secretary from relying upon her 'first-come' procedure, and we can conjure none."); *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ("The agency is in a unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."); *Sarlak*, 2020 WL 3082018, at *6 (finding that the fourth factor weighed in the government's favor because expediting the plaintiff's waiver would harm other agency activities of equal or greater priority); *Ghadami*, 2020 WL 1308376, at *9 (finding that "expediting review in [plaintiff's] case would merely direct government resources from the adjudication of other waiver applications"); *Fangfang Xu v. Cissna*, 434 F. Supp. 3d 43, 55 (S.D.N.Y. 2020) ("The effect of leapfrogging Plaintiff's application to the front of the line would do nothing to cure the deficiencies of the asylum application process; it would only harm other applicants, who are equally deserving of prompt adjudication.").  Mandamus relief is inappropriate in this context.  *See Liberty Fund*, 394 F. Supp. 2d at 117; *see also Gong v. Duke*, 282 F. Supp. 3d 566, 569 (E.D.N.Y. 2017) ("There are many other applicants who have waited even longer than

- 14 -

plaintiff; to grant him priority is to push them further back in line when the only difference between them is that plaintiff has brought a federal lawsuit. That factor should not give him any advantage."); *Varol v. Radel*, 420 F. Supp. 3d 1089, 1098 (S.D. Cal. 2019) ("[G]ranting relief to the Plaintiff simply moves her to the front of the line at the expense of all other applicants who may not have filed an application for mandamus relief.").

To be sure, Plaintiff may argue that this case presents the re-adjudication of only one application, which would not fundamentally reorder the pending processing queue if the Court were to grant Plaintiff's requested relief. But the Court should not struggle to cast this argument aside. As the *Tate* Court explained when rejecting a similar argument, this *TRAC* factor nonetheless favors the Government because "[w]hile the effect of an individual case would be minimal, the accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate*, 2021 WL 148394, at *11. Thus, "[t]his factor heavily favors defendants' position." *Id.*; *see also Dastagir*, 2021 WL 2894645, at *5-6; *Mohammad*, 2021 WL 2866058, at *5-6; *Liu*, 2021 WL 2514692, at *7; *Shen*, 2021 WL 1246025, at *9; *Milligan*, 502 F. Supp. 3d at 319.

### C.   *TRAC* Factors 3 and 5

"The third and fifth [*TRAC*] factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund*, 394 F. Supp. 2d at 118. These factors also weigh in Defendants' favor. Here, Defendants understand that Plaintiff claims that the processing delay has profoundly impacted the lives of Plaintiff and Plaintiff's family. *See generally* Compl. While that may be so, advancing the application here to the front of the queue would simply benefit Plaintiff to the detriment of other noncitizens, who may have experienced the same or worse impacts from a delay. Indeed,

expediting review in this case over the applications of other noncitizens would direct resources away from the adjudications that the State Department has identified as more urgent, requiring this Court to overrule the State Department's prioritization decisions and place Plaintiff at the front of the line. *See Barr Labs*, 930 F.2d at 75-76 (observing that "a judicial order putting [the petitioner] at the head of the queue [would] simply move[ ] all others back one space and produce[ ] no net gain[,]" and that agencies are in the best position to allocate their own resources); *Skalka*, 246 F. Supp. 3d at 154 (noting that courts step outside of their "limited role" where they require "agencies to invest the high degree of resources that would be necessary to accurately investigate plaintiffs' visa petitions," because such a requirement "would presumably delay other adjudications" and make others "suffer in response").

Moreover, through Plaintiff's claims, Plaintiff asks this Court to second guess or find fault in determinations that the State Department or U.S. officials in the Foreign Jurisdiction have made about the health and welfare of the State Department's workforce during the global pandemic. Unquestionably, re-adjudication of the application here has been delayed further due to measures necessary to prevent the spread of COVID-19 and protect the safety of U.S. officials—and visa applicants—abroad. The Court is ill-equipped to adjudge the appropriateness or necessity of COVID-19 restrictions or limitations that Government officials in the Foreign Jurisdiction took, or are now taking, to ensure that the Nation's consular and diplomatic officials remain safe and healthy in these uncertain times. The Court should defer to the State Department's determinations about the health and welfare of its employees and conclude that these factors weigh in Defendants' favor. *See Dastagir*, 2021 WL 2894645, at *6; *Mohammad*, 2021 WL 2866058, at *6; *Liu*, 2021 WL 2514692, at *6; *Shen*, 2021 WL 1246025, at *8; *Tate*, 2021 WL 148394, at *11; *Milligan*, 502 F. Supp. 3d at 319.

D.      *TRAC* **Factor 6**

The sixth and final *TRAC* factor provides that "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'" *TRAC*, 750 F.2d at 80.  In the Complaint, Plaintiff does not allege bad faith on the part of the State Department, alleging at most that the State Department and U.S. officials in the Foreign Jurisdiction could be more forthcoming with information regarding the refused application and its status.  *See generally* Compl.  While a lack of information may be frustrating, it is not proof of impropriety or bad faith.  Instead, it is consistent with limitations on work caused by the pandemic and the plethora of applications seeking visas to come to this country.  Reviewing similar facts, the *Tate* Court concluded that this factor also weighs in Defendants' favor.  *See Tate*, 2021 WL 148394, at *12 ("the good faith of the agency in addressing the delay weighs against relief") (quotation marks omitted); *see also Dastagir*, 2021 WL 2894645, at *6; *Mohammad*, 2021 WL 2866058, at *6-7; *Liu*, 2021 WL 2514692, at *7; *Shen*, 2021 WL 1246025, at *9; *Milligan*, 502 F. Supp. 3d at 319-20.  This Court should similarly conclude that this factor weighs in Defendants' favor.[3]

---

[3]      Lastly, although Plaintiff brings APA claims, the basis for Plaintiff's challenge is not final agency action, but rather agency inaction.  Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply.  *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, Civ. A. No. 19-3696 (APM), 2021 WL 495078, at *3 (D.D.C. Feb. 9, 2021) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment).  Moreover, the production of an administrative record at this stage is unnecessary—the United States seeks to dismiss this case not based on an administrative record, but instead based on the facts alleged in the complaint and the present status of the visa application.  *See generally Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review.") (citing *TRAC,* 750 F.2d at 79).

**IV.**    <u>Plaintiff Fails to State a Cognizable Constitutional Claim</u>

Plaintiff also purports to bring a claim under the Due Process Clause of the Fifth Amendment.  Plaintiff does not specify whether this claim is based on a procedural or substantive theory.  Under either, however, this claim plainly lacks merit.

To the extent Plaintiff purports to bring a procedural due process claim (i.e., that the procedures afforded the Beneficiary to consider the visa request are constitutional inadequate), it plainly fails.  "[T]he Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause."  *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1964 (2020).  Put another way, a non-citizen "who seeks admission to this country may not do so under any claim of right.  Admission of aliens to the United States is a privilege granted by the sovereign United States Government.  Such privilege is granted to an alien only upon such terms as the United States shall prescribe.  It must be exercised in accordance with the procedure which the United States provides."  *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950).  "Whatever the procedure authorized by Congress is, it is due process[.]"  *Id.* at 544.  Consequently, to the extent Plaintiff complains about improper or inadequate procedures, Plaintiff must rely on a statutory claim (i.e., the APA) and not the procedural Due Process Clause of the Constitution.

To the extent Plaintiff purports to bring a substantive due process claim—presumably based on Plaintiff's alleged fundamental right to consortium or family unity—the Supreme Court has rejected that claim too.[4]  In *Kerry v. Din*, 576 U.S. 86, 88 (2015), a U.S. citizen challenged the

---

[4]    To the extent Plaintiff attempts to bring a substantive due process claim based on any purported fundamental right to enter this country, such a claim clearly fails as "an applicant for initial entry has no constitutionally cognizable liberty interest in being permitted to enter the United States[,]" let alone a fundamental one.  *Rafeedie v. INS*, 880 F.2d 506, 520 (D.C. Cir. 1989);

denial of the visa application of her husband, alleging that "it deprived her of her constitutional right to live in the United States with her spouse." While the Court ultimately fractured, Justice Scalia's response for the plurality was simple: "There is no such constitutional right." *Id.* Explaining further, the Court held that "a long practice of regulating spousal immigration precludes [the U.S. citizen's] claim that the denial of [her non-citizen, husband's] visa application has deprived her of a fundamental liberty interest." *Id.* at 95.[5] Justice Scalia's opinion is consistent with D.C. Circuit precedent, which holds "a U.S. citizen has no constitutional right which is violated by the denial of a spouse's visa application." *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 133-64 (D.D.C. 2019) (Cooper, J.) (citing and applying *Swartz v. Rogers*, 254 F.2d 338, 339 (D.C.

---

*see also Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative.")

[5]     An uninterrupted line of circuit authorities has also held that whatever the contours of the fundamental right to family unity, it does not include a right of a U.S. citizen or national to reside in this country with a family member who is not permitted to be here under the Nation's immigration laws. *See Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 907-08 (6th Cir. 2020) (rejecting substantive due process claims based on the alleged fundamental right of family integrity brought by U.S. citizen children challenging the removal of their father); *Martial-Emanuel v. Holder*, 523 F. App'x 345, 349-50 (6th Cir. 2013) ("no court has ever held that the doctrine of substantive due process developed in these cases prevents the government from controlling when and how an alien may remain in the United States"); *Marin-Garcia v. Holder*, 647 F.3d 666, 672-74 (7th Cir. 2011); *Payne-Barahona v. Gonzales*, 474 F.3d 1, 3 (1st Cir. 2007) (collecting cases); *Gallanosa v. United States*, 785 F.2d 116, 120 (4th Cir. 1986); *Newton v. INS*, 736 F.2d 336, 342-43 (6th Cir. 1984); *Ayala-Flores v. INS*, 662 F.2d 444, 445-46 (6th Cir. 1981) (same); *Delgado v. INS*, 637 F.2d 762, 763-64 (10th Cir.1980); *Cervantes v. INS*, 510 F.2d 89, 92 (10th Cir. 1975) ("[t]he incidental impact on aliens' minor children caused by the enforcement of duly-enacted conditions on aliens' entrance and residence does not create constitutional problems"); *Cortez-Flores v. INS*, 500 F.2d 178, 180 (5th Cir. 1974) ("deportation of a parent does not deprive the child of any constitutional rights"); *de Robles v. INS*, 485 F.2d 100, 102 (10th Cir. 1973) ("the incidental impact of immigration and naturalization laws on the marriage status and on the family unit . . . is not in and of itself significant and does not raise constitutional problems"); *Perdido v. INS*, 420 F.2d 1179, 1181 (5th Cir. 1969) ("[n]ot every family with diverse citizenship among its members can be reunited in this country").

Cir. 1958)).   Consequently, Plaintiff's claim, if based on substantive due process, is legally untenable.

## <u>CONCLUSION</u>

The desire to apply for papers necessary to travel to this country and apply for admission is obvious, and the frustration caused by delays in the process to secure those papers is understandable.  This Court's role in that process is, however, limited.  And this case—whether decided on threshold questions or the merits—falls squarely outside of that limited role. Accordingly, the Court should dismiss this action.  A proposed order is enclosed herewith.

Dated: January 3, 2022
      Washington, DC

                                    Respectfully submitted,

                                    MATTHEW M. GRAVES, D.C. Bar #481052
                                    United States Attorney

                                    BRIAN P. HUDAK
                                    Acting Chief, Civil Division

                                    By:         /s/ *Derek S. Hammond*
                                        DEREK S. HAMMOND
                                      Assistant United States Attorney
                                      555 Fourth Street, NW
                                      Washington, DC 20530
                                      (202) 252-2511

                                    *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| EDMOND MEYOU,           ) | |
|                 ) | |
|       Plaintiff,      ) | |
|                 ) | |
|       v.        ) | Civil Action No. 21-2806 (JDB) |
|                 ) | |
| U.S. DEPARTMENT OF STATE, *et al.*,   ) | |
|                 ) | |
|       Defendants.    ) | |
|                 ) | |

**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' motion to dismiss, and the entire record herein, it is hereby

ORDERED that Defendants' motion is GRANTED; and it is further

ORDERED that this action is DISMISSED WITHOUT PREJUDICE.

SO ORDERED:

_____         _____

Date                    JOHN D. BATES
                        United States District Judge