UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EDMOND MEYOU,

    Plaintiff,

    v.

U.S. DEPARTMENT OF STATE, et al.,

    Defendants.

Civil Action No. 21-2806 (JDB)

## MEMORANDUM OPINION

Plaintiff Edmond Meyou brings this lawsuit under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq., and the Mandamus Act, 28 U.S.C. § 1361, to compel certain government officials and entities to adjudicate a visa application on behalf of his spouse, Mahugnon Eklou. See Compl. in the Nature of Mandamus Arising from Defs.' Refusal to Adjudicate Pl.'s Immigrant Visa Appl. [ECF No. 1] ("Compl.") ¶¶ 2, 8. Meyou also claims that defendants' failure to adjudicate the visa application has violated his due process rights under the Fifth Amendment. Id. ¶¶ 30–31. Defendants have moved to dismiss Meyou's complaint in its entirety. Mot. to Dismiss & Mem. in Supp. Thereof [ECF No. 6] ("Mot.") at 1. Because the alleged delay in adjudicating the visa application is neither unreasonable nor unconstitutional, the Court will grant the motion and dismiss the case without prejudice.

### Background[1]

Edmond Meyou is a United States citizen. Compl. ¶ 1. Meyou's wife, Mahugnon Eklou, is currently residing in Benin, where she is a citizen. Id. ¶ 2. Meyou filed an I-130 visa petition on Eklou's behalf with United States Citizenship and Immigration Services ("USCIS") in

---

[1] The relevant facts are drawn mostly from Meyou's complaint and presumed to be true for present purposes.

1

December 2018.  Id. ¶ 14.  USCIS approved the visa petition in August 2019.  Id. ¶ 16.  The case was then sent to the National Visa Center for processing.  Id. ¶ 17.  The National Visa Center assigned the case number COT2019752001, completed its processing, and sent the case to the U.S. consulate in Cotonou, Benin for an interview.  Id.  Eklou was interviewed in December 2019.  Id. ¶ 18.  Meyou alleges that since then, "the agency has refused to issue a decision on this case."  Id.

Meyou filed his complaint in October 2021.  Compl. at 7.  The complaint names as defendants the U.S. Department of State, the U.S. Embassy in Benin, Secretary of State Antony Blinken, and U.S. Ambassador in Benin Patricia Mahoney.  Id. at 1.[2]  Defendants moved to dismiss in January 2022.  Mot. at 20.  Plaintiff filed his opposition later that same month, see Pl.'s Mem. of P. & A. in Opp'n to Mot. [ECF No. 8] ("Opp'n") at 17, and defendants filed their reply in February, Reply in Supp. of Mot. [ECF No. 9] ("Reply") at 10.

## Legal Standards

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The complaint "must provide 'more than labels and conclusions'; although it 'does not need detailed factual allegations,' the factual allegations 'must be enough to raise a right to relief above the speculative level.'"  Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec., 892 F.3d 332, 343 (D.C. Cir. 2018) (quoting Twombly, 550 U.S. at 555).  "In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial

---

[2] The body of the complaint also references Ur Jaddou, Director of USCIS, as a defendant, Compl. ¶ 5, but it does not appear she is a party in this matter.

2

notice.'" Wilson v. Wolf, Civ. A. No. 20-0100 (ABJ), 2021 WL 230136, at *4 (D.D.C. Jan. 22, 2021) (quoting Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)).

## Analysis

Defendants raise four arguments in their motion. Defendants first contend that the Secretary of State is not a proper defendant in this case because Meyou "does not seek to challenge a State Department policy, rule[], practice, or regulation [and instead] seeks to compel further action on the Beneficiary's visa application, which is the exclusive province of the consulate in" Benin. Mot. at 4; see also Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024 (D.C. Cir. 2021) ("The Immigration and Nationality Act . . . grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" (citation omitted)). Second, defendants argue that the consular nonreviewability doctrine requires dismissal of Meyou's complaint because the visa application at issue in this case is no longer pending and has been refused. Mot. at 5–8. Defendants also claim that, even if the consular nonreviewability doctrine did not apply, Meyou's complaint fails since the delay in processing the application is not unreasonable. Id. at 8–17. Finally, defendants contest Meyou's assertion that the delay has violated his constitutional rights. Id. at 18–20. Because the Court ultimately agrees with defendants that the alleged delay in this case is not unreasonable and has not violated Meyou's constitutional rights, the Court will grant defendants' motion and need not consider whether the Secretary of State is a proper defendant here.

I. **The Court Declines to Apply the Consular Nonreviewability Doctrine to the Facts of This Case**

"The doctrine of consular nonreviewability prevents a federal court from second-guessing a United States consular officer's decision to issue or withhold a visa." Baan Rao, 985 F.3d at 1023. "Decisions regarding the admission and exclusion of noncitizens 'may implicate relations

3

with foreign powers, or involve classifications defined in the light of changing political and economic circumstances' and, accordingly, 'such judgments are frequently of a character more appropriate to either the Legislature or the Executive.'" Id. at 1024 (cleaned up) (quoting Trump v. Hawaii, 138 S. Ct. 2392, 2418–19 (2018)).  While "claims otherwise barred by the consular nonreviewability doctrine are subject to judicial review in two narrow circumstances," id., when the doctrine applies, it generally requires courts to "hold[] that a consular official's decision to issue or withhold a visa is not subject to judicial review." Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999).  The D.C. Circuit has recently clarified that a dismissal under the consular nonreviewability doctrine is a dismissal on the merits. Baan Rao, 985 F.3d at 1027.

The doctrine of consular nonreviewability "is not triggered until a consular officer has made a decision with respect to a particular visa application." Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Kerry, 168 F. Supp. 3d 268, 290 (D.D.C. 2016).  Relying on out-of-circuit precedent and a tenuous reading of the D.C. Circuit's language in Baan Rao, defendants argue that the doctrine also applies before a consular officer makes a final decision—i.e., while an application is still pending.  Mot. at 6 (citing Abdo v. Tillerson, Civ. A. No. 17-7519, 2019 WL 464819, at *3 (S.D.N.Y. Feb. 5, 2019)).  But that has not been the understanding of courts in this District, either before or after the D.C. Circuit's January 2021 opinion in Baan Rao.  See, e.g., Giliana v. Blinken, Case No. 21-cv-01416 (CRC), 2022 WL 910338, at *2 (D.D.C. Mar. 29, 2022); Carter v. U.S. Dep't of Homeland Sec., Case No. 1:21-cv-422 (RCL), 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021); Polyzopoulos v. Garland, Civ. A. No. 20-0804 (CKK), 2021 WL 1405883, at *6 (D.D.C. Apr. 14, 2021); Bagherian v. Pompeo, 442 F. Supp. 3d 87, 93 (D.D.C. 2020).

4

In any event, defendants argue that a consular officer has indeed made a final decision regarding Meyou's visa application as evidenced by the fact that the State Department's website lists the application as refused. Mot. at 7. That notice, however, leaves open the possibility that the application was not truly refused but rather temporarily refused to allow for administrative processing. See Visa Status Check, U.S. Dep't of State, https://ceac.state.gov/CEACStatTracker/Status.aspx (last updated Jan. 6, 2022) (stating application associated with COT2019752001 has been "[r]efused" but advising applicant that "[i]f you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing").[3] As Meyou points out, "a so-called 'refusal' letter for administrative processing 'is not a final adjudication but a mandatory intermediate step.'" Opp'n at 10 (quoting Ibrahim v. U.S. Dept. of State, Civ. A. No. 19-610 (BAH), 2020 WL 1703892, at *5 (D.D.C. Apr. 8, 2020)); see also Ghadami v. U.S. Dep't of Homeland Sec., Civ. A. No. 19-00397 (ABJ), 2020 WL 1308376, at *5 (D.D.C. Mar. 19, 2020) ("[C]laims alleging unreasonable delay while a case remains suspended in 'administrative processing' are not barred by the doctrine of consular nonreviewability."). Reviewing Meyou's claims under the deferential standard appropriate on a motion to dismiss, see Ashcroft, 556 U.S. at 678, the Court finds that defendants have not demonstrated that the visa application received a final adjudication as required for the consular nonreviewability doctrine to apply, cf. Giliana, 2022 WL 910338, at *3 (holding consular nonreviewability doctrine did not apply to visa application that had been marked "refused" because plaintiff alleged refusal was not final). Having resolved

---

[3] The Court may take judicial notice of information posted on official government websites without converting defendants' motion to dismiss into a motion for summary judgment. Dastagir v. Blinken, 557 F. Supp. 3d 160, 163 n.3 (D.D.C. 2021); Markowicz v. Johnson, 206 F. Supp. 3d 158, 161 n.2 (D.D.C. 2016).

that threshold challenge, the Court will turn to whether Meyou has articulated a plausible unreasonable delay claim.

## II. The Delay in This Case Is Not Unreasonable

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time.'" Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. § 555(b)). The APA also "authorizes a reviewing court to 'compel agency action unlawfully withheld or unreasonably delayed.'" Id. (quoting 5 U.S.C. § 706(1)). "The standard for undue delay under the Mandamus Act . . . is identical to the APA standard." Kangarloo v. Pompeo, 480 F. Supp. 3d 134, 142 (D.D.C. 2020). To evaluate claims of unreasonable agency delay, courts apply the six factors articulated in Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason;
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

TRAC, 750 F.2d at 80 (cleaned up) (citations omitted).

Factors One and Two: Factors one and two are related, and courts often consider them together. E.g., Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021); Tekle v. Blinken, Case No. 21-cv-1655 (APM), 2022 WL 1288437, at *3 (D.D.C. Apr. 29, 2022). The first factor

"has been called the 'most important,'" Dastagir, 557 F. Supp. 3d at 165 (quoting In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008)), and "[i]t asks 'whether the agency's response time . . . is governed by an identifiable rationale,'" id. (second alteration in original) (citation omitted). "The second TRAC factor requires courts to consider whether a 'statutory timeline'" suggests the agency's response time is reasonable. Desai v. USCIS, Civ. A. No. 20-1005 (CKK), 2021 WL 1110737, at *6 (D.D.C. Mar. 22, 2021) (citation omitted).

"Congress did not provide a statutory deadline to complete processing or adjudication of visa applications. In fact, 'Congress has given the agencies wide discretion in the area of immigration processing.'" Tekle, 2022 WL 1288437, at *3 (quoting Skalka v. Kelly, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)); see also Didban v. Pompeo, 435 F. Supp. 3d 168, 176 (D.D.C. 2020) ("Decisions regarding the admission of foreign nationals are granted an especially wide degree of deference . . . ."). The Court will "turn to case law as a guide" to determine whether Meyou has plausibly alleged that the delay in this case is unreasonable. Sarlak v. Pompeo, Civ. A. No. 20-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).

Cases considering unreasonable delay claims often "'seem to focus on the delay' from the last Government action 'to the issuance of the opinion.'" Mahmood v. U.S. Dep't of Homeland Sec., Civ. A. No. 21-1262 (RC), 2021 WL 5998385, at *6 (D.D.C. Dec. 20, 2021) (quoting Brzezinski v. U.S. Dep't of Homeland Sec., Civ. A. No. 21-376 (RC), 2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021)). Meyou alleges that Eklou was interviewed on December 11, 2019, yet the visa application remains pending. Compl. ¶ 18. As of the time of this Memorandum Opinion, Meyou and Eklou have been waiting roughly 29 months, or just under two-and-a-half years, for a decision. While there are "[n]o bright lines . . . 'courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three

7

to five years are often not unreasonable.'" Sarlak, 2020 WL 3082018, at *6 (quoting Yavari v. Pompeo, Case No. 2:19-cv-02524 (SVW), 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)). Indeed, "[c]ourts in this District consistently have held that two or three years does not constitute an unreasonable delay." Tekle, 2022 WL 1288437, at *3 (collecting cases); see also Ghadami, 2020 WL 1308376, at *8 ("[M]any courts . . . have declined to find a two-year period to be unreasonable as a matter of law.").

Although each case must be analyzed independently, the recent opinions in Dastagir, Tekle, and Mahmood convince the Court that the length of the delay in this case weighs in favor of dismissal. All three cases are from this District and involve delays in the processing of I-130 petitions. Dastagir, 557 F. Supp. 3d at 162; Tekle, 2022 WL 1288437, at *1; Mahmood, 2021 WL 5998385, at *1. In each case, the court held that a period of delay similar to the one here weighed in favor of dismissal. Dastagir, 557 F. Supp. 3d at 162, 165 (40-month delay from last action on application to judicial opinion);[4] Tekle, 2022 WL 1288437, at *1, 3 (33-month delay); Mahmood, 2021 WL 5998385, at *6 (25-month delay). Tekle is particularly relevant as the delay in that case was longer than the delay in this case and arose after the foreign national spouse was interviewed. See Tekle, 2022 WL 1288437, at *1.

Meyou argues that "there are many courts that have found delays of over one year—like the delay in this case—to be unreasonable." Opp'n at 11 (collecting cases). But some of the cases he cites in support of this assertion involved delays substantially longer than the delay here. E.g., Ren v. Mueller, No. 6:07-CV-790-Orl-19DAB (PCF), 2008 WL 191010, at *11 (M.D. Fla. Jan.

---

[4] Dastagir involved additional mitigating facts that supported dismissal, including that the government had re-interviewed the foreign national spouse roughly a year before the court's opinion, 557 F. Supp. 3d at 165, and that the Moscow Embassy's ability to process visa applications dramatically decreased due to COVID-19, id. at 165–66. Nevertheless, the opinion still offers some support for the conclusion that the delay in this case is not unreasonable.

22, 2008) (roughly four-year delay); Mazouchi v. Still, No. C-06-07915 (RMW), 2007 WL 2070324, *5 (N.D. Cal. July 13, 2007) (same). Furthermore, he cites no cases from this District nor any that are more recent than 2008. The Court does not find these authorities very persuasive. Cf. Mahmood, 2021 WL 5998385, at *8 (considering an identical list of citations and concluding that the authorities provided only "nominal persuasive weight" because "there is an abundance of case law within this district finding delays longer than two years not unreasonable").

The fact that none of Meyou's cases are more recent than 2008 is particularly important. Whether the delay in processing a visa application is reasonable "cannot be decided in the abstract." Mashpee, 336 F.3d at 1102. Due to the COVID-19 pandemic, the State Department suspended routine visa services at all U.S. embassies and consulates in March 2020. Suspension of Routine Visa Servs., U.S. Dep't of State, Bureau of Consular Affairs (July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html. Though the government began a phased resumption of visa services in July 2020, id., the delay associated with COVID-19 is important context and provides another reason to conclude that TRAC factors one and two favor the government.

Factor Four: The fourth factor, like the first factor, "carries the greatest weight in many cases." Giliana, 2022 WL 910338, at *5 (quoting Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)). It instructs courts to consider "the effect of expediting delayed action on agency activities of a higher or competing priority." TRAC, 750 F.2d at 80. As many courts have recognized, ordering an agency to expedite the review of a particular visa application results in line-jumping and ultimately delays the final adjudication of the applications that were skipped. E.g., Dastagir, 557 F. Supp. 3d at 167; Tekle, 2022 WL 1288437, at *5; Mahmood, 2021 WL

5998385, at *8; Giliana, 2022 WL 910338, at *5; see also In re Barr Laby's, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991) ("[A] judicial order putting Barr at the head of the queue simply moves all others back one space and produces no net gain. Agency officials not working on Barr's matters presumably have not just been 'twiddl[ing] their thumbs.'" (second alteration in original) (citation omitted)). Hence, this factor weighs in favor of defendants.

Factors Three and Five: Factors three and five "ask [c]ourts to consider the delay's negative effects on the 'human health and welfare' at stake and the 'nature and extent of the interests' as tilting toward unreasonableness." Mahmood, 2021 WL 5998385, at *8 (quoting TRAC, 750 F.2d at 80). Defendants contend that these factors should favor dismissal because accelerating the review of Meyou's case would be to the detriment of others, Mot. at 15, but that argument fits better under factor four. As defendants concede, "the processing delay has profoundly impacted the lives of Plaintiff and Plaintiff's family." Id. The Court has no reason to doubt that Meyou's and Eklou's interests in having the visa application processed are sincere and substantial, see Opp'n at 1 ("Plaintiff Edmond Meyou has been trying to bring his wife to the United States for over three years. This is a case about delay and family separation."), and these factors weigh in favor of Meyou, see Tekle, 2022 WL 1288437, at *5; Mahmood, 2021 WL 5998385, at *8. But see Dastagir, 557 F. Supp. 3d at 168 (concluding that factors three and five did not weigh in favor of plaintiff, or did so only slightly, due to line-jumping concerns).

Factor Six: The sixth factor, which reminds courts that they "need not find any impropriety . . . to hold that agency action is unreasonably delayed," TRAC, 750 F.2d at 80 (citation and internal quotation marks omitted), is neutral here. Meyou does not allege that defendants have acted in bad faith. Opp'n at 13; Reply at 7; see also Dastagir, 557 F. Supp. 3d at 168; Tekle, 2022 WL 1288437, at *5.

Considering these factors together, the Court concludes that Meyou's complaint does not state a plausible unreasonable delay claim. The most important factors—those regarding the length of the delay and concerns about line-jumping—weigh in favor of granting the motion to dismiss, and factors three and five are not strong enough to justify the opposite conclusion. See Dastagir, 557 F. Supp. 3d at 165–69; Tekle, 2022 WL 1288437, at *3–5; Mahmood, 2021 WL 5998385, at *7–9. While the Court is sympathetic to Meyou's and Eklou's situation, the hardship they suffer "is outweighed by the rule of reason supplied by case law and the fact that granting relief would be at the expense of others without any net gain." Tekle, 2022 WL 1288437, at *5. This conclusion "does not mean that the Government's delay in processing [the] visa application will remain reasonable indefinitely." Mahmood, 2021 WL 5998385, at *9. But, as of now, Meyou has failed to allege a plausible unreasonable delay claim under the APA or Mandamus Act.

### III. The Delay Has Not Violated Meyou's Constitutional Rights

Meyou also alleges that the 29-month delay in processing the visa application has violated his due process rights under the Fifth Amendment. Compl. ¶¶ 30–32. Meyou does not specify whether he is articulating a substantive or procedural due process claim. But under either theory, his claim lacks merit, and defendants are entitled to dismissal.

"To succeed on a substantive due process claim, a plaintiff must prove 'egregious government misconduct' that deprives him of a liberty or property interest." Bellinger v. Bowser, 288 F. Supp. 3d 71, 85 (D.D.C. 2017) (quoting George Wash. Univ. v. Dist. of Columbia, 318 F.3d 203, 209 (D.C. Cir. 2003)); accord Mahmood, 2021 WL 5998385, at *9 (stating plaintiff must show "violation of a fundamental right 'deeply rooted in this Nation's history'" (citation omitted)). "A procedural due process violation occurs when an official deprives an individual of a liberty or property interest without providing appropriate procedural protections." Atherton v. D.C. Off. of

11

Mayor, 567 F.3d 672, 689 (D.C. Cir. 2009); accord Mahmood, 2021 WL 5998385, at *9 ("'[P]laintiff must show that there was a cognizable liberty or property interest at stake' first." (citation omitted)).  Hence, "[b]oth types of due process violations require . . . an allegation that the plaintiff has been 'deprived of a fundamental right or liberty or property interest.'"  Colindres v. U.S. Dep't of State, Case No. 21-cv-348 (GMH), 2021 WL 5906041, at *6 (D.D.C. Dec. 14, 2021) (citation omitted); see also Goode v. Dist. of Columbia, No. 21-7038, 2022 WL 1275370, at *2 (D.C. Cir. Apr. 29, 2022) (per curiam) ("In order to determine whether there has been a violation of due process rights, we undertake a two-part inquiry: first, we must determine whether the claimant was deprived of a protected interest . . . ." (citation omitted)).

Meyou claims he has met this requirement by alleging that he has suffered "a loss of family unity."  Opp'n at 15.  But in Swartz v. Rogers, 254 F.2d 338 (D.C. Cir. 1958), the D.C. Circuit rejected a similar claim in the context of deportation, reasoning that while deportation "would put burdens upon the marriage . . . [it] would not in any way destroy the legal union which the marriage created."  254 F.2d at 339.  The Swartz court held that a spouse "has no constitutional right which is violated by the deportation of" the other spouse.  Id.  "Based on the holding in Swartz, numerous courts in this District have dismissed the argument raised here, that denial of an alien spouse's visa implicates the due process rights of a citizen spouse."  Colindres, 2021 WL 5906041, at *7 (collecting cases); see also Kerry v. Din, 576 U.S. 86, 101 (2015) (plurality opinion of three Justices) ("Because [citizen spouse] was not deprived of 'life, liberty, or property' when the Government denied [non-citizen spouse] admission to the United States, there is no process due to her under the Constitution.").

Meyou opposes this conclusion by citing certain Ninth Circuit authorities that have reached different conclusions.  Opp'n at 13–15 (citing, among other cases, Bustamante v. Mukasey, 531

12

F.3d 1059 (9th Cir. 2008)).  But "[g]iven Swartz, that is not the law in this Circuit."  Rohrbaugh v. Pompeo, 394 F. Supp. 3d 128, 134 n.4 (D.D.C. 2019); see also Mostofi v. Napolitano, 841 F. Supp. 2d 208, 212 (D.D.C. 2012) ("[T]his Circuit, unlike the Ninth Circuit, does not recognize consular decisions affecting only the 'physical conditions' of a marriage as implicating any constitutionally protected interests." (quoting Swartz, 254 F.2d at 339)).  Hence, the Court is bound by precedent to join the many other judges in this District that have rejected virtually identical due process claims to the one raised here.  E.g., Manzoor v. USCIS, Civ. A. No. 21-2126 (CKK), 2022 WL 1316427, at *7–8 (D.D.C. May 3, 2022); Mahmood, 2021 WL 5998385, at *10; Colindres, 2021 WL 5906041, at *7–8; Zandieh v. Pompeo, Civ. A. No. 20-919 (JEB), 2020 WL 4346915, at *7–8 (D.D.C. July 29, 2020); see also Jafarzadeh v. Nielsen, 321 F. Supp. 3d 19, 47–49 (D.D.C. 2018) (summarizing debate over Swartz but concluding that it "remains the law of this Circuit, by which this Court is bound").

## Conclusion

For the foregoing reasons, the Court will grant defendants' motion and dismiss the complaint in its entirety without prejudice.  While the lengthy delay in processing the visa application at issue in this case is undoubtedly frustrating, Meyou has failed to plausibly allege that the delay is unreasonable or that it has violated his constitutional rights.  A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  May 17, 2022